## BRIDGEWATER FER. CO. v. SHARON BR. CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF BEAVER COUNTY.

Argued October 6, 1891—Decided November 9, 1891.

1. The provisions of §§ 31, 32, act of April 29, 1874, P. L. 90, prohibiting a bridge or ferry company from exercising "its corporate franchises within three thousand feet of any other bridge or ferry in actual use," were repealed by §§ 7, 8, act of April 17, 1876, P. L. 34.

2. Wherefore, a ferry company, incorporated under said acts in 1885, is not entitled to an injunction restraining the erection of a bridge within three thousand feet or any other prescribed distance from its ferry, by a bridge company incorporated under the same acts in 1888.

3. It is incorrect to hold that a ferry company is not in actual use, within the provision of § 31, act of April 29, 1874, above quoted, when its operation is temporarily interrupted in consequence of the stream being frozen and gorged with ice: Per Mr. Justice MITCHELL.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 181 October Term 1890, Sup. Ct.; court below, No. 1 September Term 1888, C. P. in Eq.

Master's Report.

On July 20, 1888, the Bridgewater Ferry Company filed a bill in equity against the Sharon Bridge Company, praying upon the facts therein averred, (1) for an injunction restraining the defendant company, its agents and servants, from erecting its bridge as then located, or within three thousand feet of the route or terminal points of the plaintiff company; (2) for other relief.

An answer having been filed, and issue joined, the cause was referred to Mr. Thomas Henry, as examiner and master, who, on August 28, 1888, filed a report as follows:

The following facts appear from the bill, answer and testimony:

The plaintiff was chartered October 12, 1885, and defendant company on the eleventh day of February, 1888, under the act of April 29, 1874, and the several supplements thereto, "relating to the incorporation and regulation of certain corporations." The ferry company was empowered to establish and maintain a ferry across Big Beaver creek, from Bridgewater, Beaver county, to a point opposite in the township of Rochester, either of steam power or otherwise, for the purpose of passage of persons, vehicles, animals and freight; and was authorized to take and receive such tolls for crossing said ferry as may be appointed by said company. The bridge company was empowered to erect a bridge over the same stream, at or near the mouth of Brady's run, and were empowered to transport passengers, etc., and also to take and receive tolls.

In pursuance of the power conferred, the ferry company did establish a ferry between the terminal points aforesaid in said stream, and had provided a safe and commodious ferry boat and skiff prior to the granting of defendant's charter. Said ferry was operated with a wire rope, and ran from about April 1st to December 15th in the years 1886 and 1887. In the winter months the ferry boat was laid up on the beach, and no ferrying was done, in consequence of the stream being frozen and gorged with ice. It is admitted, as charged in the bill, that the bridge company has commenced the erection of a bridge over Beaver creek, within the distance of five hundred feet of the said ferry, and that the terminal points of the bridge are almost identical with those of the ferry.

### Master's Report.

The plaintiff's bill charges that the erection of said bridge by the defendant is without authority of and in violation of law, and destructive of plaintiff's rights, privileges and franchises; and if said bridge is allowed to be erected by defendant, said ferry company will suffer great and irreparable injury, and will be deprived of great gains and profits; and prays that said bridge company may be restrained and enjoined by perpetual injunction from erecting said bridge, as located or within three thousand feet of plaintiff's route or terminal points.

The defendant denies that said bridge, as located, and about to be erected, is without authority of and in violation of law, or that it is destructive of plaintiff's rights, privileges and franchise, as conferred by the ferry charter and the laws of the commonwealth of Pennsylvania; and further says that it is without knowledge as to the injury or the extent of the injury that may be occasioned by depriving said plaintiff of tolls and profits by the erection of said bridge, and neither admits nor denies the correctness of said allegations; and denies that said loss, occasioned by the erection of the said bridge, is without authority of law, and avers that said defendant has full legal right to erect said bridge, and to collect and receive tolls from passengers, etc., crossing the same.

The master finds that the ferry was not in actual use at the time of the granting of letters patent to the bridge company, to wit, on the eleventh of February, 1888; and further finds that the Big Beaver creek is not naturally a navigable stream. The old act of assembly declaring it such, was long since repealed by implication, in consequence of the state erecting dams across it, in constructing the Erie extension of the Pennsylvania canal.

In considering this case, it is not necessary to enter into an investigation of the rights of ferries under the common law. Both these corporations are created by statute, and in that alone are we to search for the rights and powers conferred.

In providing for the incorporation of certain corporations, the legislature enacted the act of April 29, 1874, P. L. 73, in § 31 providing as follows: "No bridge or ferry company shall have the right to exercise its corporate franchise within three thousand feet of any other bridge or ferry in actual use at the date of issuing letters patent to the new corporation." And in

Master's Report.

section 32 of the same act: " Any ferry company, incorporated
as aforesaid, shall have the right and power to erect and main-
tain a ferry, whether of steam power or otherwise, across any
of the streams or waters of this commonwealth, subject to the
rights of prior occupants within three thousand feet of the point
at which the proposed ferry is to be located."

An act, supplementary to the above, approved March 14,
1876, P. L. 6, amended that part of § 31 relating to bridges
in cities of the third class, but did not alter it as to ferries.
The supplemental act, approved April 17, 1876, P. L. 34,
amended § 31, and dropped or omitted that part thereof before
quoted, and amended § 32 to read as follows: " Any ferry
company, incorporated as aforesaid, shall have the right and
power to erect and maintain a ferry, either of steam power or
otherwise, across any of the streams or waters of this common-
wealth, subject to the rights of prior occupants."

Under these acts of assembly, the plaintiff company contends
that it has an exclusive right to carry passengers, etc., across
the Big Beaver creek, and take tolls for the same, within three
thousand feet of the ferry buildings, and that the ferry charter
is in the nature of a contract between the public and the cor-
poration.   This position cannot be maintained unless the ferry
company can show a property in the line of travel at their
ferry.   The act of April 17, 1876, as above quoted, clearly in-
tended to remove the restriction, as to distance, between in-
corporated ferries: Braddock Ferry Co.'s App., 3 Penny. 32.

But what are the rights and privileges of the ferry company
under the acts creating it?   The act, under which the company
derives its power, being a public grant, must be strictly con-
strued.   A corporation is strictly limited to the exercise of
those powers which are specifically conferred on it: Common-
wealth v. Railroad Co., 27 Pa. 351.   The ferry company, then,
by this route possesses the right to maintain a ferry across the
Big Beaver, operated with suitable boats, for the passage of
the traveling public, and to receive tolls for the same.   But
tolls from whom ?   From those alone that cross the ferry.
This ferry company certainly has no right in the line of travel,
because there can be no property in what one neither has in
possession nor any right to reduce to possession.   The plaint-
iff can compel no one to cross its ferry, and it has no property

in the tolls until they are deposited in the toll dish of the ferry-man. How the erection of the defendant's bridge, which in no way interferes with the ferry landings, changes no roads, or makes the approach to the ferry less easy, can be an invasion of plaintiff's rights, the master cannot comprehend.

The master is of the opinion that under the acts above quoted, as between a ferry and bridge there was no limit or restriction whatever as to distance, and that a bridge company might erect its bridge within any distance of a ferry company, without violating the act of 1874, or the rights of the ferry company, provided it did not interfere with the ferry landings or with the boat in crossing from one landing to another. The words " bridge or ferry " are connected by the disjunctive particle " or," and the legislature intended to compare each corporation with others of the same kind; bridge company with bridge company, and ferry with ferry. The act might be properly read: " No bridge company shall have the right to exercise its corporate franchises within three thousand feet of any other bridge company, and no ferry company shall exercise," etc. This is a reasonable and natural construction of the language. The master is confirmed in this view from the fact that the act of March 14, 1876, extended to and affected " bridges " only; and the amendatory act of April 17, 1876, after introducing wharf companies, removes the restriction as between ferry companies only; the legislature evidently intending and considering bridges, ferries, and wharves as of a separate and distinct class.

The plaintiff ferry company was incorporated after the passage of the act of April 17, 1876, and had notice that the exclusive feature of the act of 1874, limiting the distance to three thousand feet, was entirely abrogated as to ferries. It was also incorporated subsequent to the decision of the Braddock Ferry Co. case, made in 1882, in which it was held that the right to keep and maintain a public ferry belonged to every riparian owner: Braddock Ferry Co.'s App., 3 Penny. 32, and cases there cited. This ferry company may be just as much injured by other kinds of competition as by the bridge, and the objection to the erection of the bridge goes only to the kind or degree of competition.

The plaintiffs in this case complain that the erection of this

bridge will deprive them of great gains and profits. This is admitted in the answer, and assumed in the argument. The ferry company having no property in the tolls, except those collected, the loss is an incidental or consequential one ; and for such losses compensation has never been made in Pennsylvania: Shrunk v. Navigation Co., 14 S. & R. 71, 83. The old turnpike and canal companies were seriously affected by the creation of rival lines; and both were seriously crippled, if not ruined, by the incorporation and construction of railroads ; yet no claim was ever successfully made that they were entitled to compensation for the loss. It was the result of the growth of population and the demand for new modes of travel. Our own neighborhood affords a striking illustration in what manner one corporation may affect another. The Pittsb. & L. E. railway was built at the west end of Fallston bridge, and greatly diverted the travel and traffic on said bridge, and also the travel through the town of Fallston. The travel was thrown on the east side of the Big Beaver creek, and the plaintiff's ferry was created by and reaped the benefit of this state of things. But, neither the stockholders of the bridge, nor the property owners of Fallston, ever supposed that they had any remedy against either the railroad or the ferry company.

The offer of the plaintiff of the omission of the defendant's application for its charter, in failing to state the distance said bridge was from the ferry, supports no allegation in the bill. If the bridge charter was improperly and improvidently issued, the plaintiff has its remedy by writ of quo warranto.

The master, finding no injury to the rights, privileges and franchises, recommends that said plaintiff's bill be dismissed with costs.

Various exceptions to the findings of fact and conclusions of law of the master having been argued, the court, WICKHAM, P. J., on September 5, 1890, filed the following opinion :

[The master appointed in this case recommends that the plaintiff's bill be dismissed, and the court is constrained to adopt the same view.

The master bases his conclusion on several grounds. One of these is all-sufficient; hence it is not necessary to discuss

Opinion of Court below.

the others or intimate any opinion as to their weight. The one referred to is the repeal by the act of April 17, 1876, of so much of § 31, act of April 29, 1874, as prevented the establishment of a bridge or ferry within three thousand feet of any other bridge or ferry in actual use.

The attempt to amend the section in the act of 1874 above referred to, by the act of March 14, 1876, was unavailing, as the latter law, by exempting cities of the third class from its operation, falls within the prohibition against local legislation, contained in § 7, article III. of the constitution of 1874: Scowden's App., 96 Pa. 422; Davis v. Clark, 106 Pa. 377: Scranton City v. Silkman, 113 Pa. 191. But, assuming this statute to be valid, it became, on its passage, a part of the section it was intended to amend, and therefore could not escape the repealing effect of the act of April 17, 1876. The legislature, when passing the latter act, must be presumed to have had in view the thirty-first section of the act of 1874, as it then existed; that is, as amended.

The peculiar wording of the act of April 17, 1876, shows that the legislative intention was to fully supply the thirty-first section of the act of 1874, by furnishing a complete substitute therefor. A link was taken out of the chain, and a new one, somewhat similar but not the same, inserted in its place. The amendment to the old law is introduced by the words, "Amend section thirty-one so as to read as follows." This is equivalent to saying "Section thirty-one shall hereafter read as follows, and not otherwise." He who reads is told to look no further. The omission of the three thousand feet limit clause from the last amending act, must be held to have occurred purposely; but whether purposely or otherwise, the effect is the same.

The construction adopted by the master, and herein affirmed, is fully sustained by the Supreme Court in the Braddock Ferry Co.'s App., 3 Penny. 32. That the plaintiff's ferry will be rendered valueless by the erection and use of the bridge is evident, but the court is powerless to grant any relief.

And now, to wit, September 5, 1888, the exceptions to the report of the master are overruled, the bill is dismissed at the plaintiff's cost, and a formal decree is directed to be prepared in accordance with the master's recommendation.] [1]

Opinion of the Court.

—A final decree having been entered, dismissing the bill,[2] the plaintiff took this appeal, specifying that the court erred :

1. In delivering the opinion embraced in [  ] [1]
2. In entering the decree dismissing the bill.[2]

*Mr. A. H. Clarke* (with him *L. C. Barton*, and *Mr. A. J. Barton*), for the appellant.

On the repeal of a statute by implication, counsel cited : Barber's Case, 86 Pa. 392 ; Commonwealth v. Railway Co., 98 Pa. 127 ; Seigfried v. Commonwealth, 101 Pa. 200 ; Williamsport City v. Brown, 84 Pa. 438 ; Wayne Co.'s App., 4 W. N. 411 ; Law Library v. Chester Co., 1 Chester Co. R. 181 ; Street v. Commonwealth, 6 W. & S. 209 ; Commonwealth v. Easton Bank, 10 Pa. 422 ; Erie v. Bootz, 72 Pa. 196. As to the exclusive character of the plaintiff's franchise : Johnson v. Crow, 87 Pa. 186 ; Broom's Leg. Max., 6th Am. ed., 524 ; Gates v. McDaniel, 2 Stew. (Ala.) 211 (19 Am. Dec. 49).

*Mr. John M. Buchanan* (with him *Mr. Henry Hice*), for the appellee.

Counsel cited : Braddock Ferry Co.'s App., 3 Penny. 32 ; Johnson v. Crow, 87 Pa. 189.

OPINION, MR. JUSTICE MITCHELL :

Whatever might be the rights of the complainant at common law or by statute, as against another ferry company, which it is not now necessary to consider, it is clear that its rights against the defendant bridge company must arise, if at all, from the act of April 29, 1874, P. L. 73. By § 31 of that act, " no bridge or ferry company shall have the right to exercise its corporate franchises within three thousand feet of any other bridge or ferry in actual use at the date of issuing letters patent to the new corporation ; " and by § 32 " any ferry company . . . . . shall have the right to erect and maintain a ferry . . . . . subject to the rights of prior occupants within three thousand feet of the point at which the proposed ferry is to be located." It may well be doubted if these provisions were meant to apply except as between bridge company and bridge company, or ferry company and ferry company ; but it is unnecessary to determine the exact construction of the lan-

Opinion of the Court.

guage of this clause, as the limitation of distance has, so far as respects the present case, been repealed.

The act of April 17, 1876, P. L. 30, is a supplement to the act of 1874, and § 7 reads, " Amend section 31 so as to read as follows, namely;" then giving the amended section, numbered 31, as if in its regular place in the act, introducing wharf companies, making some other changes, and entirely omitting the restriction as to other companies within three thousand feet. Then follows the re-enactment of § 32, as to the right of a ferry company to erect and maintain a ferry " subject to the right of prior occupants," but again with the significant omission of the words, " within three thousand feet of the point at which the proposed ferry is to be erected." These new sections are substantial reconstructions of the old ones. They are complete in themselves, and leave no doubt whatever that they were intended as substitutes for the others which were thereby repealed. This was also the conclusion reached by the learned master in Braddock Ferry Co.'s App., approved by this court, 3 Penny. 32.

There was another supplement to the act of 1874 passed March 14, 1876, P. L. 6, which repealed the limitation of three thousand feet as to bridge companies under certain circumstances, and it is argued that this statute, which retained the limitation as to ferries, is still in force. But it is a conclusive answer, as well suggested by the learned judge below, that the act of March 14th had become a part of the act of 1874; and it was the latter, as thus amended, that was again amended by the act of April 17, 1876. In fact, it would seem that the legislature, having had its attention called to the inconveniences of the restriction as to bridges, concluded, when the subject again came before it, to repeal the restriction altogether.

Appellant's charter was granted in 1885, under the amended act of 1876. All its rights as the first or prior occupant of its ferry are preserved to it by the terms of that act, but they do not include any monopoly or exclusive right within three thousand feet, or any other prescribed distance ; and, this claim thus failing, there is no evidence that any of its rights have been infringed, or that the loss which it is likely to suffer is other than the inevitable result of business competition and improved facilities of public travel.

The learned master finds that the appellant's ferry " was not in actual use at the time of granting letters patent to the bridge company, to wit, 11th February, 1888; " but he also finds that it was operated during 1886 and 1887, from about April 1st to December 15th, and that in the winter months " no ferrying was done in consequence of the stream being frozen and gorged with ice." We could not concur with this conclusion. The temporary interruption in the winter by vis major would not be such a going out of actual use as to forfeit the company's rights under the statute. This point does not affect the present case, and we notice it only to avoid the implication of approval, should it arise in a case where it would be material.

Decree affirmed.