## The Riverton Ferry Company, a Corporation, Appellant, *v.* The McKeesport & Duquesne Bridge Company, a Corporation.

[Marked to be reported.]

*Ferries—Bridges—Eminent domain—Damages.*

Where a bridge company has appropriated a landing of a ferry company, and built its structure across the line of the ferry, and it appears that during the interval between the commencement and the completion of the bridge, the ferry would have had an earning capacity, if it had not been destroyed, the ferry company is entitled to damages for the destruction of its business during that interval at least: Bridgewater Ferry Co. v. Sharon Bridge Co., 145 Pa. 404, distinguished.

Argued Nov. 4, 1896. Appeal, No. 146, Oct. T., 1896, by plaintiff, from decree of the Superior Court, April T., 1896, No. 49, affirming the decree of C. P. No. 2, Allegheny Co., Oct T., 1890, No. 356, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Appeal from the Superior Court. 1 Pa. Superior Ct., 587.

Bill in equity for an injunction and for damages.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in affirming the decree of the court of common pleas, and in overruling appellant's assignments of error to the court of common pleas.

*Davis S. McCann*, for appellant.—Injunctions have always been granted in this state to restrain the seizure of property where compensation has not been previously tendered or secured: Curwensville Boro.'s App., 129 Pa. 74 ; Harper's App., 109 Pa. 9 ; Sower v. Philadelphia, 35 Pa. 231 ; Jarden v. P., W. & B. R. R., 3 Whar. 502 ; Sharpless v. West Chester, 2 Phila. 130 ; Penna. R. R. Co.'s App., 93 Pa. 150 ; Penna. R. R. Co.'s App., 115 Pa. 517 ; Sharon Ry. Co.'s App., 122 Pa. 533 ; Stormfeltz v. Manor Turnpike Co., 13 Pa. 555 ; Cake v. P. & E. R. R.

Co., 87 Pa. 307; Tyrone School District's App., 22 W. N. C. 513.

The bridge was begun late in June 1890, and completed May 12, 1891. The bill in this case was filed August 30, 1890. Under such circumstances plaintiff cannot be accused of laches or delay in filing its bill. But we contend that even if plaintiff had allowed the defendant company to proceed without opposition, still, under the decisions, the defendant company being a trespasser, was not entitled to any warning: Groff's App., 128 Pa. 621; Com. v. R. R., 24 Pa. 159; Scheetz's App., 35 Pa. 88; Stewart's App., 56 Pa. 422; Bitting's App., 105 Pa. 517; Com. v. R. R., 27 Pa. 339; Harvey v. R. R., 47 Pa. 436; State of Penna. v. Wheeling & Belmont Bridge Co., 13 Howard, 518; Lynch v. Union Institution for Savings, 158 Mass. 394; Tucker v. Howard, 128 Mass. 361; Baxter v. Bower, 44 L. J. Ch. 625; P. & L. E. R. R. v. Jones, 111 Pa. 213.

The master decides, in effect, that the case is not one for an injunction, but for damages. The cases seem to decide that the right to an injunction must first be established, and then an account of the damages sustained to that time, follow as an incident to the injunction: Walters v. McElroy, 151 Pa. 557; Allison's App., 77 Pa. 221; Souder's App., 57 Pa. 498.

Plaintiff was entitled to substantial damages: Montgomery Co. v. Bridge Co., 110 Pa. 54; Monongahela Navigation Co. v. U. S., 148 U. S. 328.

*James Fitzsimmons*, with him *John Ewing Speer*, for appellee.—Plaintiff was guilty of laches: 12 Am. & Eng. Ency. of Law, 533; Kilpatrick v. B. & L. Assn., 119 Pa. 30; Sutcliff v. Isaacs, 1 Parsons, 494; Mayer's App., 73 Pa. 164.

The question as to the necessity of landings for a bridge company is clearly settled by the case of the Pittsburg & Lake Erie R. R. v. Jones, 111 Pa. 204.

We submit that the Riverton Ferry Company in this case suffered no other damage to its chartered rights and privileges as alleged by it than would be suffered by other persons or the public generally whether they were the owners of land or franchises, or the owners of steamboats running upon and being operated on the said highway: Ferry Co. v. Sharon Bridge Co., 145 Pa. 404.

OPINION BY MR. JUSTICE DEAN, January 4, 1897:

The Riverton Ferry Company was organized under charter from the commonwealth, dated May 23, 1883, to maintain a ferry across the Monongahela river from the foot of Riverton street in McKeesport to a point in Mifflin township on the opposite side of the river. The ferry was established at a considerable expenditure of money, and the company continued to operate it down to 1890, when it was interrupted by the bridge company, this defendant, which had been chartered in June, 1890, with power to erect and maintain a bridge across the river from foot of Riverton street to a point on the opposite bank. The bridge, the master finds, was built directly across the line of the ferry. The facts that the landing of the bridge was authorized at foot of Riverton street, the same point which the ferry company had been authorized to appropriate seven years before, and that the bridge company was authorized to build across to a point on the opposite side, would seem to warrant an implication of authority to the bridge company to appropriate the property of the ferry company. However this may be, the master has found as a fact that the ferry company remained silent for months, until there had been a large expenditure of money by the bridge company, before it moved by proper proceedings to restrain interference with its rights, and therefore by laches lost in equity the right to an injunction restraining the bridge company from completing and operating its structure. Therefore, while he finds the construction of the bridge resulted in an appropriation to some extent of the ferry company's property, and the destruction of its power to operate under its grant, it is at most only entitled to a decree for damages. He then finds that in assessing the damages, any proof of earnings of the ferry company up to the time its operations were stopped by the building of the bridge is irrelevant, because the stoppage of earnings results from inevitable competition by an improved method of crossing. He therefore assesses against defendant only nominal damages, six and one fourth cents. The conclusion of the master seems to be based on a remark of Justice MITCHELL in Ferry Company v. Bridge Company, 145 Pa. 404. In that case a ferry company was chartered in 1885, and a bridge company in 1888 over Big Beaver creek in Beaver county. The ferry company sought to

restrain the bridge company from adopting a bridge site 500 feet from the ferry, on the ground that the legislation then in force prohibited the bridge company from building nearer than 3,000 feet. There was evidence the ferry company's property would become practically valueless if the bridge were constructed only 500 feet from it. But this court decided that the limitation of 3,000 feet had been repealed by subsequent legislation, and that even if the revenues of the ferry company were actually transferred to a new and more convenient method of travel, that was no reason for granting an injunction. In the course of the opinion, this language is used: "All its rights (the ferry company's) as the first or prior occupant of its ferry are preserved to it by the terms of the act, but they do not include any monopoly or exclusive right within 3,000 feet or any other prescribed distance; and the claim thus failing, there is no evidence that any of its rights have been infringed, or that the loss which it is likely to suffer is other than the inevitable result of business competition and improved facilities of public travel." These remarks are clearly applicable to the facts of that case; the bridge was 500 feet from the ferry; each could operate its own method of crossing the river without interruption from the other, except that resulting from competition, and for that the law afforded no redress. But, if the bridge company in that case, as here, had appropriated one of the ferry company's landings and built its structure across the line of the ferry an entirely different state of facts would have been presented; the question then would have been, did the physical seizure of part of the ferry company's property, and the physical interruption of its operations destroy its earning power? If so, what was the value of the earning power lost by such appropriation of its property? It may be, and it probably is, correct to say that here, after this bridge was built and open to the public the earning power of the ferry company was practically at an end, but in the interval between the commencement and completion of the bridge, nearly a year, the evidence showed the ferry had a capacity to earn if it had not been destroyed; it was therefore entitled to a computation of the damages it had sustained to this extent at least; for that loss was not the result of competition, but of a taking. Starting with the master, the error runs through all the decrees; the facts

are assumed correctly, but their significance is overlooked by a mistake as to what was decided in Ferry Co. v. Bridge Co. supra. We have no evidence before us which will enable us to compute the damages; the master rejects the evidence offered to that end, or disregards it, and it seems to have gone no further than the court of common pleas, but the master finds only nominal damages, and states explicitly his reason for not assessing more; the reason is erroneous. While we concur in all his findings and conclusions except this one, as to it we reverse the decree, thereby sustaining appellant's 5th, 6th, 7th, 8th assignments of error. As to the other assignments they are overruled, and it is directed the case be referred back to the master for assessment of damages other than nominal, on the evidence before him, or after taking such other evidence in this particular as will enable him to make a satisfactory computation of the damages as indicated in this opinion.